**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF THE COMPLAINT OF N&W MARINE TOWING, L.L.C., AS OWNER OF THE M/V NICHOLAS, ITS ENGINES, TACKLE, APPURTENANCES, FURNITURE, ETC. PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | **CIVIL ACTION NO. 2:20-cv-02390**<br>**C/W 2:21-cv-00150**<br>**THIS PLEADING PERTAINS TO ALL CASES**<br><br>**JUDGE: GUIDRY**<br><br>**MAGISTRATE: van MEERVELD** |

**N&W MARINE TOWING, L.L.C.'s**
**OPPOSITION TO TREY WOOLEY'S MOTION TO STAY LIMITATION OF LIABILITY AND MOTION TO LIFT INJUNCTION**

**MAY IT PLEASE THE COURT:**

Claimant Trey Wooley's Motion to Stay Limitation of Liability Proceeding and Motion to Lift Injunction should be denied for the following reasons, as discussed respectively below:

I. Attempts to manufacturer a single claimant in a Limitation Action does not change the fact that removal of Mr. Wooley's state court lawsuit was proper;

   a. Removal is proper under "snap removal" due to complete diversity of citizenship at time of removal of Mr. Wooley's general maritime claims;

   b. Notwithstanding the valid "snap removal," removal is also proper because N&W Marine Towing, LLC should not be considered for purposes of determining diversity of citizenship due to Mr. Wooley's violation of this Court's Stay Order issued upon filing of N&W's Limitation Action;

II. Removal of Mr. Wooley's general maritime claims are allowed because an independent basis of jurisdiction (diversity) and because Mr. Wooley did not file suit against his Jones Act employer nor did he request a jury trial;

III. *Pretermitting* whether Mr. Wooley's case is properly removed, the new stipulation still does not meet the U.S. Fifth Circuit requirements;

**Overview of why the "new" stipulation has no bearing**
**<u>on Mr. Wooley's properly removed lawsuit</u>**

The unique procedural status of this case is a product of sharp maneuvering and untimely attempts at forum shopping. The end result of all of this maneuvering results in the fact that Wooley's remaining claims against N&W Marine Towing, LLC ("N&W") are properly before this Court on all issues. Wooley's Motion to Stay these proceedings in favor of a state court forum should be denied.

As this Court is aware, N&W filed a Limitation on August 31, 2020.[1] At the time, procedural protections under Rule F were in place for the personal injury litigant to later proceed in state court, but those procedures, including this Court's Stay Order, must be followed to continue to claim those protections. Further, Wooley could have protected his choice of forum by bringing a lawsuit against Turn Services, his Jones Act employer, but he chose not to. Now with the August 6, 2021 filing of Turn's Motion to Dismiss Wooley's claims against Turn because of their settlement and Mr. Wooley's undisclosed "agreement/assignment" with Turn, the Court is now on notice that Mr. Wooley has chosen to forgo this procedural protection as well.[2] Those doors have closed.

All of this was Mr. Wooley's decision. Instead of filing his suit before the Stay Order was entered, entering in a proper Stipulation and filing his state court suit at a later time, or filing a Jones Act suit against his employer, Wooley instead decided to violate the Stay Order and filed a lawsuit in state court. At the time that suit was filed, it was ripe for removal based on diversity. The case was removed by the non-diverse defendant (Royal Caribbean Cruises, Ltd. ("RCCL")) and now may remain in this Court on its own jurisdictional merit because this Court has jurisdiction over the remaining general maritime law claims. Mr. Wooley does not

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 125.

have a Jones Act claim or jury demand to anchor him in state court.

## LAW AND ARGUMENT

### I. ATTEMPTS TO MANUFACTURER A SINGLE CLAIMANT IN A LIMITATION ACTION DOES NOT CHANGE THE FACT THAT REMOVAL OF MR. WOOLEY'S STATE COURT LAWSUIT WAS PROPER;

#### a. REMOVAL IS PROPER UNDER "SNAP REMOVAL"

In *Texas Brine Company, L.L.C. v. American Arbitration*, 955 F. 3d. 482 (Apr. 7, 2020), the U.S. Fifth Circuit has recently held that a non-forum defendant may remove an otherwise removeable case even when a named defendant who has yet to be "properly joined and served" is a citizen of the forum state. In jargon terms, the U.S. Fifth Circuit has approved "snap removal."

In *Texas Brine*, the Fifth Circuit discussed when removal is proper based on diversity of citizenship and stated:

> A defendant may remove a civil case brought in state court to the federal district court in which the case could have been brought. 28 U.S.C. § 1441(a). In diversity cases, there is an additional limitation on removal, known as the forum-defendant rule. The rule provides that
>
> [a] civil action otherwise removable solely on the basis of the jurisdiction under [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.§ 1441(b)(2).

The question addressed in *Texas Brine* was whether the forum-defendant rule prohibits a non-forum defendant from removing a case when a not-yet served defendant is a citizen of the forum state. The *Texas Brine* Court found that when AAA filed its notice of removal, the case was "otherwise removable" as required by Section 1441(b) because the district court has original jurisdiction of a case initially filed in Louisiana state court in which

the parties are diverse. 28 U.S.C. § 1441(a); § 1332(a).[3] The Texas Brine Court further stated, "the forum-defendant rule's procedural barrier to removal was irrelevant because the only defendant 'properly joined and served,' the AAA, was not a citizen of Louisiana the forum state. 28 U.S.C. § 1441(b)(2)."[4]

In Mr. Wooley's case, at the time RCCL removed Mr. Wooley's state court lawsuit, only Royal Caribbean was served.[5] On January 22, 2021, RCCL timely and properly filed a Notice of Removal from Civil District Court for the Parish of Orleans of Mr. Wooley's lawsuit, Case No. 2021-00214.[6] N&W was not served through their registered agent until February 1, 2021, which was 9 days *after* Royal filed the Notice of Removal.[7]

Accordingly, on January 22, 2021, the date of removal, the only defendant served was RCCL. Complete diversity existed at the time of removal as RCCL is considered a foreign citizen and/or citizen of the State of Florida and Wooley is a citizen of Louisiana.[8] There was complete diversity of citizenship when RCCL filed its removal in the Eastern District of Louisiana. As established by the Fifth Circuit in *Texas Brine*, the forum-defendant rule's procedural barrier to removal was irrelevant because the only defendant 'properly joined and served' was RCCL and N&W (Louisiana defendant) had not yet been served.

On February 3, 2021, this Court consolidated RCCL's Removal Action (21-cv-00150) with N&W's Limitation Action (20-cv-02390) (Rec. Doc. 23).

[3] *Texas Brine Company, L.L.C. v. American Arbitration*, 955 F. 3d. 482, 486 (Apr. 7, 2020)
[4] *Id.*
[5] See Case 2:21-cv-00150, Rec. Doc. 6-2-Affidavit of Service of Petition of Damages submitted by Mr. Wooley regarding service of Royal Caribbean Cruises, Ltd. and Majesty of the Seas through its registered agent via Long Arm Statute on January 22, 2021;
[6] See Case 2:21-cv-00150, Rec. Doc. 1.
[7] See attached Ex. A-Unsworn Declaration of Warren Waguespack of N&W regarding email from registered agent regarding service of Mr. Wooley's lawsuit on February 2, 2021;
[8] Case no. 20-cv-02390, Rec. Doc. 29, p. 2 -RCCL Opposition to Trey Wooley's Motion to Remand and 2:21-cv-00150, Rec. Doc. 6-1-Pleadings from Orleans Parish attached as Exhibits to RCCL's Notice of Removal pursuant to 28 U.S.C. § 1447(B). For ease of convenience, Petition for Damages p. 1, attached hereto as Exhibit B.

b. **NOTWITHSTANDING THE PROPER "SNAP REMOVAL," REMOVAL IS ALSO PROPER BECAUSE N&W MARINE TOWING, LLC SHOULD NOT BE CONSIDERED FOR PURPOSES OF DETERMINING DIVERSITY OF CITIZENSHIP DUE TO MR. WOOLEY'S VIOLATION OF THIS COURT'S STAY ORDER ISSUED UPON FILING OF N&W'S LIMITATION ACTION;**

As discussed in N&W's Opposition to Remand, on September 17, 2020, in N&W Marine's Limitation Action, the Court issued its Order Approving Petitioner's Declaration of Value, Letters of Undertaking and Directing the Issuance of Notice and Restraining Prosecution of Claims.[9] The Court set forth the following Stay Order (hereinafter referred to as the "Limitation Stay"):

> IT IS FURTHER ORDERED that the commencement or further prosecution of any action or proceeding against the Petitioner, their sureties, their underwriters and insurers, or any of their property with respect to any claims for which Petitioner seek limitation of liability herein, including any claim arising out of or incident to or connected with personal injury, loss or damage allegedly caused, arising out of, or resulting from incidents which occurred on the Mississippi River at approximately mile marker 86-87 on February 29, 2020, as described in the Complaint, be and the same is hereby stayed and restrained until the hearing and determination of this proceeding.[10]

Claimant Trey Wooley violated the Limitation Stay by filing suit against N&W Marine, its vessel and its underwriters in Orleans Parish over four months after the Limitation Stay Order was issued and hand-delivered to Claimant Wooley's counsel.[11] Pretermitting the fact state court does not have jurisdiction over *in rem* claims, Claimant Trey Wooley objection to "N&W Marine Towing, L.L.C.'s request for an injunction" and reserving "his right to bring any and all claims in State Court" did not give Claimant Wooley authority to violate the Limitation

---

[9] Rec. Doc. 8.
[10] *Id.*
[11] *See* Rec. Doc. 30-Exhibit A-Hand delivery confirmation to Claimant Wooley's counsel of Stay Order and N&W Marine's Limitation Action and Rec. Doc. 1-1 in consolidated case number 21-cv-00150--Claimant Wooley's Petition for Damages in the Civil District Court, Parish of Orleans, State of Louisiana, bearing docket no. 2021-00214, entitled, "*Trey Wooley v. N&W Marine Towing, LLC, Royal Caribbean Cruises, Ltd., M/V NICHOLAS, MAJESTY of the SEAS, Starr Indemnity & Liability Company, Ascot (National Specialty Insurance) Company and ABC Insurance Company*"

Stay.[12]

For all the reasons submitted by RCCL, which N&W adopted, and N&W's Opposition to Motion to Remand[13], Claimant Wooley's joinder of N&W Marine in Mr. Wooley's state court action violated the Limitation Stay, rendering the naming of N&W Marine void and without legal effect. Further, N&W was not served in the state court litigation until after the case was removed and issue was never joined.[14]

As discuss in RCCL's Opposition to remand, federal circuit and district courts have considered the effect of a plaintiff naming, in a state court suit, a defendant that is subject to the automatic bankruptcy stay, 11 U.S.C. § 362(a). Uniformly, these courts have held that the naming of a non-diverse defendant subject to the automatic bankruptcy stay in a state court action, in violation of the stay, is void and without legal effect. Further, the citizenship of the non-diverse defendant named in violation of the stay order is not to be considered when determining complete diversity of the parties following removal.

For example, in *Brown v. Jevic*, 575 F.3d 322 (3d Cir. 2009), the plaintiff sued a non-diverse defendant and diverse co-defendant in state court, one week after the non-diverse defendant filed its petition for bankruptcy. The plaintiff did not seek leave of the bankruptcy court to lift the stay. The U.S. Third Circuit held that this was "plainly improper under the automatic stay" and that because the plaintiff had improperly joined the non-diverse defendant, such joinder could not prevent the diverse defendant from removing to federal court. *Id*. at 326. Like Wooley, the plaintiff in *Brown* had "no reasonable basis to believe that [the non-diverse defendant] was amenable to suit" and the court held "that [the non-diverse defendant] was a fraudulently joined party and its status as a Defendant could not be used to

---

[12] Rec. Doc. 27-1, C/A no. 21:cv-00150, p. 2-3.
[13] Rec. Doc.29 and incorporated by N&W herein.
[14] La. Rev. Stat. Ann. 13:1507(D)(2).

defeat otherwise proper federal jurisdiction." *Id*. at 327[15]

Further, the Civil District Court for the Parish of Orleans did not have jurisdiction over either vessel because there is exclusive federal jurisdiction over proceedings and actions against vessels *in rem*. See Schoenbaum, 1 Admiralty & Mar. Law § 4:2 (6th ed.) (citing *Madruga v. Superior Court of State of Cal. in & for San Diego Cty.*, 346 U.S. 556, 560 (1954)). Therefore, the naming of the vessels was without legal effect and has no bearing on diversity of citizenship. (See Notice of Removal, Rec. Doc. 1-1, para. 6-9).

The fact that Mr. Wooley has recently settled with RCCL has no bearing on whether removal is proper as the Fifth Circuit and United States Supreme Court has held the "time of filing" rule. "It has long been hornbook law, applied by courts at all levels of the federal judiciary throughout the nation , that whether federal diversity of citizenship jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced by filing the complaint with the court as prescribed by Federal Rule of Civil Procedure 3.1.[16]

"In keeping with the currently prevailing rule, a change of parties, by addition, substitution, or *elimination*, also will not divest the court of diversity jurisdiction if the nature of the action remains the same."[17] "…The sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action" as a matter of policy.[18] "This approach provides maximum stability and certainty to the viability of the action and minimizes repeated challenges to the court's subject matter jurisdiction and the expenditure of resources that entails."[19] "Moreover,

[15] Rec. Doc. 29, p. 13-14-RCCL's Opposition to Trey Wooley's Motion to Remand, which N&W adopted in conjunction with their Opposition (Rec. Doc. 30).
[16] § 3608 The Time for Determining Diversity Jurisdiction, 13E Fed. Prac. & Proc. (3d ed.), p. 1.
[17] *Id.* at p. 3 citing several cases including, *Richey v. Walmart Stores, Inc.*, 390 Fed. Appx. 375 (5th Cir. 2010).
[18] *Id.* at p. 3, quoting *Dery v. Wyer*, 265 F.2d. 804, 808 (2d Cir. 1959). (Hincks, J.)
[19] *Id.* at p. 3,

determining whether diversity of jurisdiction exists at the commencement of the action offers a uniform test that is relatively easy to apply."[20]

In *Richey v. Walmart Stores, Inc.*, 390 Fed. Appx. 375 (5th Cir. 2010), the Fifth Circuit found the district court did not err when it denied the plaintiff's motion to remand because the plaintiff and defendant were completely diverse and were the only named parties at the time of removal. The subsequent addition of a non-diverse defendant after removal to federal court was effectuated did not alter the complete diversity that existed at the time of removal. Even if the plaintiff could demonstrate that the new defendant was non-diverse, the demonstration would be irrelevant to the court's analysis since the court considers *whether diversity existed at the time of removal*.[21]

## II. REMOVAL OF MR. WOOLEY'S GENERAL MARITIME CLAIMS ARE ALLOWED DUE TO INDEPENDENT BASIS OF JURISDICTION (DIVERSITY) AND BECAUSE MR. WOOLEY DID NOT FILE SUIT AGAINST HIS JONES ACT EMPLOYER NOR DID HE REQUEST A JURY TRIAL;

Mr. Wooley has made general maritime law claims against N&W Marine and RCCL (recently dismissed). "General maritime law claims are not now removable—nor have they ever been—*without an independent basis of jurisdiction* other than 28 U.S.C. § 1333 ...."[22]

The Fifth Circuit has "not yet spoken directly on this issue." *Riverside Const. Co., Inc. v. Entergy Mississippi, Inc.*, 626 Fed.Appx. 443, 447 (5th Cir. Sept. 17, 2015). The Fifth Circuit has recently noted, however, that the "*vast majority of district courts considering the question have maintained that such lawsuits are not removable*," further characterizing the

---

[20] *Id.* at 3.
[21] *Richey v. Walmart Stores, Inc.*, 390 Fed. Appx. 375, 378 (5th Cir. 2010).
[22] *Trahan v. Teche*, 2020 WL 6143664, (Slip copy) (W.D. La. Oct. 1, 2020 Hanna, P. citing the following at *3 (adopted by Judge Juneau Slip copy 2020 WL 6143691): (*Parish v. Exxon Mobile Corp.*, No. CIV.A. 13-6717, 2015 WL 4097111 (E.D. La. July 7, 2015) (Brown, J.); *Bingham v. Haynes*, No. CV 17-1694-SDD-RLB, 2018 WL 2124898, at *3 (M.D. La. Feb. 28, 2018), *report and recommendation adopted*, No. CV 17-1694-SDD-RLB, 2018 WL 2125941 (M.D. La. May 8, 2018) (Dick, J.); *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809 (M.D. La. 2015) (DeGravelle, J.); *Gregoire v. Enter. Marine Services, LLC*, 38 F. Supp. 3d 749, 754 (E.D. La. Aug. 6, 2014) (Duval, J.).

disagreement as "lopsided" in favor of precluding removal. *Sangha v. Navig8 Ship Management PTE LTD*, No. 17-20093, ––– F.3d ––––, 2018 WL 706518, at *2 (5th Cir. Feb. 5, 2018).

However, the Court does not have to address this undecided issue because in this matter, as explained above, there *is complete diversity* between the parties (Mr. Wooley and RCCL) and an independent basis for finding diversity jurisdiction pursuant to 28 U.S.C. § 1332.

In *Milstead v. Total Petrochemicals & Refining USA, Inc.*, No. 14-148, 2014 WL 4820610 (M.D. Sept. 29, 2014), "the issue before the Court [was] whether a general maritime claim which falls under § 1333 is removable under the current version of § 1441 when a jury trial is requested by the plaintiff in his state court petition." The Milstead Court found that such a claim was not removable because it would deprive the plaintiff of the right to a trial by jury, which was prohibited by the savings to suitors clause. However, the *Milstead* ruling is distinguishable because in *Milstead* there was not an independent basis of jurisdiction (i.e.. diversity). Moreover, in Claimant Wooley's filed Orleans Parish lawsuit (filed in violation of this Court's Stay Order), Mr. Wooley does *not* request a trial by jury and diversity provides an independent basis for jurisdiction.[23]

### III. *PRETERMITTING* WHETHER MR. WOOLEY'S CASE IS PROPERLY REMOVED, THE NEW STIPULATION STILL DOES NOT MEET THE U.S. FIFTH CIRCUIT REQUIREMENTS;

#### A. TYPE OF AGREEMENT BETWEEN TURN AND WOOLEY IS AN UNKNOWN

Wooley and Turn Services, his Jones Act employer, have entered in an undisclosed agreement that includes an assignment of Turn's potential right to obtain reimbursement of payments made to Wooley for maintenance and cure. The precise details of this "agreement"

[23] See Ex. B-Mr. Wooley's Petition for Damages filed in Orleans Parish, on January 8, 2021, Case no. 2021-00214.

are an unknown other than Wooley has purportedly been assigned Turns' rights for indemnity/contribution.

The brief references to the agreement shared in the pleadings thus sound similar to a "Mary Carter" agreement. Under a Mary Carter agreement, one defendant in a multi-defendant suit guarantees the tort victim a minimum recovery up front. While the "settling" defendant remains a party to the lawsuit in exchange for an offset to be satisfied by a percentage of any award recovered at trial from the nonsettling defendants. Unlike the Mary Carter agreement, however, it appears that Turn Services does not intend to take an active role in the litigation, but instead assigned its rights to Wooley foisting that responsibility on their employee.

Wooley—a Jones Act seaman—has claimed from the outset that he does not believe that Turn Services was negligent. But, allowing the seaman to decide negligence prior to a trial on the merits and before the statute of limitations has run on his claims does not protect the vessel owners' rights in the Limitation proceeding, nor should it erase Turn's negligence. In fact, allowing the seaman, who may or may not know the rights he is relinquishing or forfeiting, to decide his employer was not negligent runs contrary to centuries of laws and admonitions.[24]

Nevertheless, if the Court determines that this proposed approach of assignment of a Jones Act employer's indemnity and contribution claims to the seaman for the recovery of maintenance and cure, shifting the expense and risk of litigation with third parties to the seaman without the participation of the employer is appropriate, a review of how other courts

[24] As Justice Story of the Supreme Court put wrote in an 1823 case which is often cited for the proposition that seaman are "wards of the court":

> Every court should watch with jealousy any encroachment upon the rights of seamen, because they are unprotected and need counsel, because they are thoughtless and require indulgence, because they are credulous and complying, and are easily overreached.

have handled Turn's new risk management strategy is in order because this case is one of the early test runs of the strategy.

Further, N&W refers this Court to its previous Motion to Continue[25] and asking for an Adverse Inference against Turn, as N&W suspects that this alliance between Turn and the Plaintiff is largely responsible for the stunted discovery progress in this case.[26]

The first example, cited by Wooley--*Williams v. Buck Kreihs Marine Repair, LLC*[27] was an appeal of an exception of no right of action.[28] Thus, Wooley's contention that its agreement with Turn is specifically sanctioned by Louisiana state courts is an overreach. In that case, Turn Services paid maintenance and cure to one of its workers Turn classified as a seaman. Turn entered into a receipt, release, indemnification, assignment, and settlement agreement[29] wherein Turn assigned its right to recover maintenance and cure to its employee. Buck Kreihs, the defendant, disputed the seaman status of the plaintiff. Therefore, the Fourth Circuit Court of Appeal was not presented with proper handling of this type of agreement vis a vis confecting the proper stipulation to protect the Limitation fund and the vessel owner pursuant to Rule F.[30]

A glimpse at the state court judge's impression of this type of agreement was reflected in his ruling. The judge ruled, "[B]ecause plaintiff has already received maintenance and cure he may not collect it a second time."[31] While double recovery is problematic in a regular,

---

[25] Rec. No. 107.
[26] *See, e.g. Mary Carter's True Colors: Champertous Settlement Agreements under Louisiana's Nullity Doctrine*, 77 TUL. L. REV. 885, 886 ("The underlying rationale for the policy-based condemnation of such contracts [e.g. Mary Carter] is that a financially motivated intermeddler would likely stir up meritless litigation, avoid settlement, increase damage awards, and 'supress evidence and witnesses.'"). The Court record is replete with references to the Wooley's allegation that the Limitation Fund is in dispute and that Wooley is of the opinion that the value of his claim exceeds the interim bond amount.
[27] 2021-CV-0001 (La. App. 4th Cir. 02/24/21), 314 So.3d 1040.
[28] *Id.*
[29] This agreement was disclosed to the parties. *Williams*, 314 So.3d at 1042.
[30] The case settled shortly after the Court of Appeal for the Fourth Circuit's ruling.
[31] *Williams,* 314 So.3d at 1043.

straightforward case, in a Limitation proceeding, Turn's strategy to make duplicate amount of the dollar value of maintenance and cure available, with no additional cost to Turn is particularly problematic when the amount of the fund is at issue. Since Turn is obligated to pay maintenance and cure to its seaman, without regard to fault, the assignment of Turn's right to reimbursement for this "no-fault" payment from a third party to a worker who already received the benefit distorts and conflates the litigation process and runs contrary to the proportionate fault principles espoused in *McDermott v. Amclyde.*[32] Also, it artificially increases the amount sought by the claimant in "damages."

In a case very similar involving the adequacy of a stipulation, Judge Lemmon was faced with yet another seaman employed by Turn Services, LLC, who alleged he was injured at work and opted to sue a third party, but not his employer. *See In Re the Matter of the Complaint of Daigle Towing Service, LLC*, Civil Action No. 19-13521. After extensive briefing of the issues and a review of the agreement between Turn Services and its employee, Lance Lacrosse, Judge Lemmon did approve a revised stipulation and agreed to remand the case. Significantly, this stipulation specifically dealt with the indemnity/contribution portions of Turn's assigned claim with respect to the ***plaintiff's net potential judgment*** against the Limitation Petitioner—Daigle Towing.

> The Final Stipulation attached hereto as Exhibit "C" states:
>
> Any state court judgment obtained by plaintiff will be reduced by the state court judgment obtained by Turn Services, Inc. for payment of maintenance and cure to plaintiff and Turn Services, Inc. judgment will prime the plaintiff's judgment with the totality of both judgments not exceeding the limitation fund should DAIGLE TOWING SERVICE, LLC obtain a judgment limiting its liability in the limitation proceeding in federal court.[33]

---

[32] 511 U.S. 202, 114 S.Ct.1461 (1994).
[33] Civil Action No. 19-13521, Doc. No. 57.

Thus, a *pro tonto* approach was used, protecting from a double recovery for the same damages. Significantly, this Stipulation protects upfront protection of the limitation fund from an unnecessary drawdown or potential double recovery. Only the federal court, not state court, has the power provide this avenue of backdoor protection for N&W.

**B. ASSIGNMENT OF MAINTENANCE AND CURE DISTORTS ALLOCATION OF FAULT PRINCIPLES**

While Wooley's counsel would prefer this Court to ignore the effect of its settlement with Turn Services on the entirety of the litigation, the proportionate liability framework for general maritime law, as established by *McDermott v. AmClyde*, 511 U.S. 202, 114 S.Ct. 1461 (1994), permeates each decision faced by the Court. Under *Amclyde*, a tortfeasor is ultimately liable only for its proportionate share of fault. An employer may seek reimbursement for maintenance and cure from a third party tortfeasor, but to monetize this recovery through a side agreement with the Jones Act seaman and foist the responsibility of seeking that recovery to Turn's employee is ripe for abuse.

Even if the assignment of this type of claim are generally permitted, "there are good reasons for imposing certain limitations in the context of *McDermott's* proportionate fault framework." *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182 (5th Cir. 2009)(quoting *Casino Cruises Investment Co.*, *L.C. v. Ravens Manuf. Co.*, 60 F.Supp.2d 1285 (M.D. Fla. Aug. 9, 1999)). Double recovery of a single maintenance and cure claim is *not* permitted under maritime law. The Fifth Circuit has consistently held that "a seaman clearly can receive only one recovery for his medical expenses." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991). Similarly, the Third Circuit has held that a "seaman cannot obtain double compensation for a single maintenance and cure claim as a result of having rights against two shipowners." *Gooden v. Sinclair Refining Co.*, 378 F.2d 576, 580 (3d Cir. 1967).

Here, Wooley has already received payments for maintenance and cure from Turn. While Turn may have been permitted to pursue a reimbursement claim against N&W, allowing Wooley to pursue Turn's claim against N&W is unjust enrichment and an unnecessary drawdown of the limitation fund. The Third Circuit's reasoning on this concern is particularly persuasive:

> [I]n the admiralty as elsewhere in the law a litigant may not recover compensation for a single claim more than once. The ancient rule in the admiralty that the vessel and her owner must provide an injured seaman with maintenance was intended to assure him three meals a day and a bed in which to sleep during his treatment and convalescence. There is no basis in logic or law for assuming that he may ask for six meals a day or twin beds, however. *McCarthy v. Am. Eastern Corp.*, 175 F.2d 727, 729 (3d Cir. 1949), *cert. denied*, 338 U.S. 911 (1950).

From Turn's perspective, the payment of maintenance and cure is a requirement, regardless of fault. But, the ***recovery*** of the payments is dependent on the relative fault of the third parties. Traditionally, the right of reimbursement has been exclusively reserved to shipowners and/or employers who are owed reimbursement by third parties as compensation for maintenance and cure actually paid. *See, e.g., Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) ("It is firmly established in this circuit that a *shipowner* required to pay maintenance and cure may recover those payments from a third-party who caused, in whole or in part, the employee's injury.") (emphasis added); *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994) ("[T]he *shipowner* may recover [maintenance and cure] payments from a third-party whose negligence partially or wholly caused the seaman's injury.) (emphasis added); *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2dd 722, 723-24 (5th Cir. 1980) ("Indemnification of the innocent *employer* is based on the common sense principle that a party whose neglect has caused or contributed to the need for maintenance

and cure payments should reimburse the cost of those payments, which would otherwise be borne by a non-negligent or passively negligent employer.") (emphasis added).

While N&W is of the opinion that this case should proceed, in its entirely, before this Court, if the Court does decide to stay this action, the Stipulation should be revised to protect N&W as illustrated by the example Stipulation in *In Re the Matter of the Complaint of Daigle Towing Service,*

## CONCLUSION

For all the reasons stated above, Claimant Wooley's Motion to Stay N&W's Limitation of Liability Proceeding and Motion to Lift Injunction should be denied.

Respectfully submitted:

**DUNCAN & SEVIN, L.L.C.**


**KELLEY A. SEVIN T.A. (#25871)**
**ELTON F. DUNCAN III, (#14967)**
400 Poydras Street, Suite 1200
New Orleans, LA 70130
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-Mail: ksevin@duncansevin.com
E-Mail: eduncan@duncansevin.com
Attorneys for N&W Marine Towing, L.L.C.


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record, this 9th day of August, 2021.